IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM M. DANIELS JR.,          :
                                 :
          Petitioner             :
                                 :
     v.                          :     CIVIL NO. 3:CV-14-2383
                                 :
DAVID PITKINS, ET AL.,           :     (Judge Conaboy)
                                 :
          Respondent             :

FILED
SCRANTON

AUG 1 9 2015

PER _____
DEPUTY CLERK

**MEMORANDUM**
**Background**

     William M. Daniels, Jr., an inmate presently confined at

the State Correctional Institution, Albion, Pennsylvania (SCI-

Albion) filed this <u>pro</u> <u>se</u> civil rights action in the Centre

County Court of Common Pleas.  Plaintiff's action regards events

which allegedly transpired during his prior confinement at the

Benner State Correctional Institution, Bellefonte, Pennsylvania

(SCI-Benner).

     The Amended Complaint concerns conduct taken by prison

officials following an April 25, 2014 SCI-Benner visit between

Plaintiff and a female guest.  Specifically, it is alleged that

because Daniels was suspected of swallowing contraband after

being kissed by his visitor he was strip searched by a non-

defendant, Lieutenant Green, and placed in a POC[1] dry cell for

_____

     [1]  Presumably a Psychiatric Observation Cell (POC).

1

almost an entire week where he was allegedly subjected to unconstitutional conditions of confinement as well as other violations of his constitutional rights.

Counsel for Defendant Maria Leahy, PA-C filed a notice of removal of Daniels' Amended Complaint to this Court pursuant to 28 U.S.C. §§ 1441 (a).  <u>See</u> Doc. 1, ¶ 9.  The Remaining Defendants, David Pitkins, Deputy Superintendent Tammy Ferguson, Deputy Superintendent Leo Glass, Bobbi Jo Salamon, and Security Lieutenant L. W. Hoffman who are all employed at SCI-Benner by the Pennsylvania Department of Corrections (DOC Defendants), did not object to the removal and have also filed a waiver of reply to the Complaint.  <u>See</u> Doc. 7.

By Order dated June 26, 2015 Plaintiff's objections to the removal were denied by this Court.[2]  <u>See</u> Doc. 19.  Defendant Leahy has responded to the Complaint by filing a motion to dismiss for failure to state a claim.  <u>See</u> Doc. 10.  The opposed motion is ripe for consideration.

### Discussion

With respect to Defendant Leahy, the Amended Complaint vaguely contends that Leahy made "racially charged comments"

---

[2] An action commenced in state court which is premised on civil rights violations may be removed by a defendant.  <u>See</u> 28 U.S.C. § 1443; <u>West Mifflin v. Lancaster</u>, 45 F.3d 780, 785 (3d Cir. 1995).

when she visited Plaintiff in his POC cell with Lieutenant Hauser and Sergeant Natz. Doc. 2-1, p. 21, ¶ 16. Daniels elaborates that on or about April 26, 2014 Leahy went to his POC cell to check his vital signs. See id. at ¶ 92. She was accompanied by Hauser and Natz. Leahy allegedly told Plaintiff that based upon her internet research, "y'all people go out on the visit kiss and bring drugs into the prison why." Id. at ¶ 94. The moving Defendant further expressed that she believed that a balloon filled with contraband could remain inside a person for up to eight (8) days without passing it out and Daniels probably had something inside of him.

The Amended Complaint also generally contends that Leahy acted with deliberate indifference by allowing Plaintiff to continue to suffer extreme deprivations while in the POC cell. See id. at ¶ 28. Daniels asserts that when Leahy visited his POC cell and was asked to do something about the inhumane conditions of his confinement, she told the inmate that there was nothing she could do. See id.

Defendant Leahy seeks dismissal of the Amended Complaint on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies; (2) a viable denial of equal protection claim is not set forth by Daniels; (3) the verbal remarks attributed to Leahy do not rise to the level of a constitutional

3

violation; and (4) the Amended Complaint fails to allege deliberate indifference to a serious medical need.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.

A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements

4

of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 556 U.S. at 678. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Administrative Exhaustion**

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

5

administrative remedies as are available are
exhausted.

Section 1997e(a) requires administrative exhaustion
"irrespective of the forms of relief sought and offered through
administrative avenues." <u>Porter v. Nussle</u>, 122 S.Ct. 983, 992
(2002); <u>Booth v. Churner</u>, 532 U.S. 731, 741 n. 6 (2001).   Claims
for monetary relief are not excused from the exhaustion
requirement.   <u>Nyhuis v. Reno</u>, 204 F.3d 65, 74 (3d Cir. 2000).
Dismissal of an inmate's claim is appropriate when a prisoner
has failed to exhaust his available administrative remedies
before bringing a civil rights action.   <u>Ahmed v. Sromovski</u>, 103
F. Supp. 2d 838, 843 (E.D. Pa. 2000).   "[E]xhaustion must occur
prior to filing suit, not while the suit is pending."   <u>Tribe v.</u>
<u>Harvey</u>, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing
<u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999)); <u>Oriakhi</u>
<u>v. United States</u>, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

An inmate is not required to specifically plead or
demonstrate exhaustion in his or her complaint.   <u>See</u> <u>Jones v.</u>
<u>Bock</u>, 549 U.S. 199, 216 (2007);   <u>see also Ray v. Kertes</u>, 285
F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in
his complaint that he has exhausted administrative remedies).
Rather, pursuant to the standards announced in <u>Williams v.</u>
<u>Runyon</u>, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a

defendant asserting the defense of non-exhaustion to plead and prove it.[3]  The United States Supreme Court in <u>Jones</u> noted that the primary purpose of the exhaustion requirement is to allow prison officials to address complaints before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.

The administrative exhaustion mandate also implies a procedural default component.  <u>Spruill v. Gillis</u> 372 F.3d 218, 222 (3d Cir. 2004).  As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement."  <u>Id</u>. at 230.  It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest."  <u>Id</u>.  Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations.  <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

The Court of Appeals for the Third Circuit has recognized

---

[3] In <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

that "[t]here is no futility exception" to the exhaustion
requirement.  Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002)
(citing Nyhuis, 204 F.3d at 75.  A subsequent decision by the
Third Circuit Court of Appeals reiterated its no futility
exception by rejecting an inmate's argument that exhaustion
should be excused because prisoner grievances were regularly
rejected.  Hill v. Smith, 186 Fed.  Appx. 271, 274 (3d Cir.
2006).  The Court of Appeals has also rejected "sensitive'
subject matter or 'fear of retaliation' as a basis for excusing
a prisoner's failure to exhaust."  Pena-Ruiz v. Solorzano, 281
Fed. Appx. 110, 113 (3d Cir. 2008).

A Consolidated Inmate Grievance Review System has been
established by the Pennsylvania Department of Corrections
("DOC").[4] Section V of DC-ADM 804 (effective December 8, 2010)
states that "every individual committed to its custody shall
have access to a formal procedure through which to seek the
resolution of problems or other issues of concern arising during
the course of confinement."  See Doc. 29, p. 8.  It adds that
the formal procedure shall be known as the Inmate Grievance
System and provides a forum of review and two (2) avenues of
appeal.  Section VI ("Procedures") of DC-ADM 804 provides that,
after attempted informal resolution of the problem, a written

---

[4] The DOC's grievance system has been periodically amended.

grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

Defendant Leahy asserts that Plaintiff failed to file a final administrative appeal with SOIGA regarding his pending claims against Leahy. In support of that argument Plaintiff has submitted a copy of an e-mail from SOIGA employee Carla King.

Leahy has filed a motion to dismiss. However, the motion goes beyond a simple motion to dismiss under Rule 12(b)(6) because it is accompanied by evidentiary materials outside the pleadings, namely the SOIGA e-mail, which supports the non-exhaustion argument. The Court will exclude the evidentiary document outside the pleadings submitted by Leahy. Since the

9

Amended Complaint itself does not provide a basis for a finding

of non-exhaustion, this argument will be dismissed without

prejudice and may be reasserted, if appropriate, upon the filing

of a summary judgment request.

**Equal Protection**

It is next argued that the alleged racially motivated

comments by Leahy violated plaintiff's equal protection rights.

Defendant Leahy maintains that a viable equal protection claim

has not been asserted in the Complaint. See Doc. 11, p. 6.

A litigant seeking to establish a viable equal protection

claim must show an intentional or purposeful discrimination.[5]

Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert.

denied, 475 U.S. 1096 (1986).  Plaintiff's present claims do not

involve a classification based on race, religion, or national

origin.

Based upon a review of the Amended Complaint, there is no

discernible claim that Defendant Leahy engaged in intentional or

purposeful discrimination or that the Defendant treated Daniels

differently from similarly situated individuals on the basis of

his race or some other impermissible reason.  The Amended

Complaint contains no factual averments which could support a

---

[5] The Fourteenth Amendment of the Constitution provides in
pertinent part: "No State shall . . . deny any person within its
jurisdiction the equal protection of the laws."

10

claim that the Defendant Leahy intentionally engaged in any
discriminatory conduct. Dismissal of the wholly unsupported
equal protection claim against Defendant Leahy is appropriate.

**Verbal Threats**

According to the Amended Complaint, the Moving Defendant
made a racially charged comment towards the Plaintiff. As
discussed earlier, Leahy allegedly told Plaintiff that based
upon her internet research, "y'all people go out on the visit
kiss and bring drugs into the prison why." Doc. 2-1, ¶ 94. The
Defendant purportedly added that she believed that a balloon
filled with contraband could remain inside a person for up to
eight days without passing it out and Daniels probably had
something inside of him.

Defendant Leahy contends that the alleged verbal abuse does
not rise to the level of a constitutional violation. See Doc.
11, pp. 6-7.

The use of words generally cannot constitute an assault
actionable under § 1983. Johnson v. Glick, 481 F.2d 1028, 1033
n.7 (2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D.
Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa.
1993) ("Mean harassment . . . is insufficient to state a
constitutional deprivation."); Prisoners' Legal Ass'n v.
Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal

11

harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.   Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.).   A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying them, however, may state a constitutional claim.   For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.   See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient.   See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa.

12

July 29, 2008);   <u>Wright v. O'Hara</u>, 2004 WL 1793018 *7  (E.D.
Pa. 2004)(correctional officer's words and gestures, including
lunging at prisoner with a clenched fist were constitutionally
insufficient because there was no physical contact).

There is no indication that the verbal harassment allegedly
voiced against Daniels was accompanied by a reinforcing act
involving a deadly weapon as contemplated under <u>Northington</u> and
<u>Douglas</u>.  More importantly, it is not alleged that the alleged
verbal abuse was accompanied by any physically intrusive
behavior.  Given the circumstances described by Plaintiff, the
purported verbal remarks attributed to Defendant Leahy, although
perhaps offensive to Daniels, were not of such magnitude to
shock the conscience as contemplated by this Court in  <u>S.M. v.
Lakeland School District</u>, 148 F. Supp.2d 542, 547-48 (M.D. Pa.
2001) and thus, did not rise to the level of a constitutional
violation.

**<u>Emotional Distress</u>**

Plaintiff contends that the verbal abuse attributed to
Defendant Leahy caused him emotional distress.

42 U.S.C. § 1997e(e) provides that "[n]o federal civil
action may be brought by a prisoner confined in a jail, prison
or other correctional facility, for mental or emotional injury
suffered while in custody without a prior showing of physical

injury." In <u>Allah v. Al-Hafeez</u>, 226 F.3d 247,250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages. However, the Court of Appeals added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm.  Under the standards announced in <u>Allah</u>, Plaintiff's request for monetary relief to the extent that it seeks compensatory damages for emotional injury caused by Defendant Leahy's purported conduct is barred by Section 1997e(e).

## Deliberate Indifference

Leahy's next argument asserts that Plaintiff fails to allege that she was deliberately indifferent to a serious medical need.  <u>See</u> Doc. 11, p. 8.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  <u>See</u> <u>Spruill</u>

14

v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden

Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

In the context of medical care, the relevant inquiry is whether

the defendant was: (1) deliberately indifferent (the subjective

component) to (2) the plaintiff's serious medical needs (the

objective component).   Monmouth Cty. Corr. Inst. Inmates v.

Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571

F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a

physician as requiring treatment or one that is so obvious that

a lay person would easily recognize the necessity for a doctor's

attention."  Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March

26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty.

Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and

wanton infliction of pain results as a consequence of denial or

delay in the provision of adequate medical care, the medical

need is of the serious nature contemplated by the Eighth

Amendment."  Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir.

2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at

347).

With respect to the serious medical need requirement, there

is no claim by Daniels that he suffered any injury that required

medical treatment, or which resulted in any type of permanent

15

harm.  Moreover, Plaintiff has not come forth with any facts which could establish that he suffered anything more then temporary discomfort.  As such, the Amended Complaint has failed to satisfy the serious medical need requirement.

With respect to the subjective deliberate indifference component of Estelle, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  See id.  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.;

16

Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)
("deliberate indifference is proven if necessary medical
treatment is delayed for non-medical reasons.").

Based upon a liberal consideration of Plaintiff's
allegations, he was provided with timely medical attention while
in the POC.  Daniels acknowledges that Leahy checked his vital
signs and there is no assertion that any further medical care
was required.  There are no facts presented which could
establish that Leahy failed to diagnose or treat any serious
medical need.  The Amended Complaint simply does not identify
any medical treatment which was warranted but not provided.
This is simply not a situation where Plaintiff was not provided
with needed medical attention.  There is also no allegation by
Lindsey that he requested but was denied pain medication or that
he was subsequently diagnosed by any medical professional with
having any need for treatment stemming from the POC placement.
Accordingly, this Court agrees that Leahy is entitled to entry
of dismissal with respect to any claim of deliberate
indifference to medical needs.

**Failure to Protect**

Plaintiff also generally contends that Leahy acted with
deliberate indifference by allowing Plaintiff to suffer extreme
unsanitary deprivations while in the POC cell.  See id. at ¶ 28.

Daniels asserts that when Leahy visited his POC cell and was asked to do something about the inhumane conditions of his confinement, she told the inmate that there was nothing she could to.  See id.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities."  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety.  See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

Plaintiff asserts a claim that his POC placement posed a

18

risk of serious harm which Leahy was aware of and allowed to continue.   This claim is not addressed by the pending motion to dismiss.   Since the failure to protect claim against Defendant Leahy satisfies the standards set forth in <u>Iqbal</u> and <u>Twombly</u>, it will proceed.   An appropriate Order will enter.

RICHARD P. CONABOY
United States District Judge

DATED: AUGUST 19th, 2015

19