IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM M. DANIELS JR.,                :
                                       :
          Plaintiff                    :
                                       :
     v.                                :    CIVIL NO. 3:CV-14-2383  FILED
                                       :                            SCRANTON
DAVID PITKINS, ET AL.,                 :    (Judge Conaboy)
                                       :                            MAR 0 6 2017
          Defendants                   :



---

**MEMORANDUM**
**Background**

     William M. Daniels, Jr., an inmate presently confined at
the State Correctional Institution, Albion, Pennsylvania (SCI-
Albion), filed this <u>pro</u> <u>se</u> civil rights action in the Centre
County Court of Common Pleas by.  An amended complaint was
thereafter filed.  <u>See</u> Doc. 2-1, p. 18.  On December 15, 2014,
Plaintiff's action was removed to this Court by Defendant Maria
Leahy pursuant to 28 U.S.C. §§ 1441 (a).[1]  <u>See</u> Doc. 1, ¶ 9. By
Order dated June 26, 2015, Plaintiff's objections to the removal
were denied.

     By Memorandum and Order dated August 19, 2015, Defendant
Leahy's motion to dismiss was partially granted.  <u>See</u> Doc. 10.
Specifically, it was determined that Leahy was entitled to entry
of dismissal with exception of the allegation that she failed to

---

     [1]  Leahy is a Physician's Assistant who was contracted to
provide medical care to Plaintiff and other inmates.

1

protect Plaintiff from unconstitutional conditions of confinement. See Doc. 24. By Memorandum and Order dated February 17, 2017, a motion for summary judgement by Defendant Leahy was granted. See Doc. 62.

The surviving claims in the Amended Complaint regards events which allegedly transpired during Daniels' previous incarceration at the Benner State Correctional Institution, Bellefonte, Pennsylvania (SCI-Benner).[2] Remaining Defendants are the following  SCI-Benner employees: Superintendent David Pitkins, Deputy Superintendents Tammy Ferguson and Leo Glass, Counselor Bobbi Jo Salamon, and Security Lieutenant Larry Hoffman.

According to the Amended Complaint Daniels was suspected of swallowing contraband on April 25, 2014 after being kissed by a female visitor at SCI-Benner.[3] After the encounter between Plaintiff and his visitor, he was strip searched by a non-defendant, Lieutenant Green, and placed in a POC[4] cell which was set up as a dry cell, i.e. one with no running water. Daniels adds that he  was given a suicide smock to wear, had one hand

---

[2]  Remaining Defendants point out that Plaintiff was confined at SCI-Benner from April-June, 2014.

[3] Advance information was allegedly received by the prison's Security Office that Plaintiff's visitor would be sneaking heroin into the facility and passing it to the Plaintiff. See Doc. 53-1, p. 6.

[4]  POC refers to a Psychiatric Observation Cell (POC).

handcuffed to a bed and was provided with a blanket. Daniels was placed under constant surveillance and his bodily waste was examined in an effort to determine if he passed any contraband/drugs.  The Plaintiff alleges that he initially told that after three clean bowl movements he would be released. Despite complying with that requirement, Daniels states that he remained in the dry cell until May 2, 2014.  Plaintiff maintains that while in the dry cell he was subjected to unconstitutional conditions of confinement because he was not allowed to clean himself for the first four days of his placement; was only provided with drinking water at meal time; and was subjected to constant illumination.

As a result of prison's officials' alleged erroneous determination that Plaintiff had swallowed a balloon containing drugs, the inmate was issued a misconduct charging him with possession of contraband, refusing to obey an order, lying to an employee, failure to report the presence of contraband, and violation of visiting room regulations.[5]  Daniels claims that because he was never issued a confiscation slip in accordance with prison policy and the unknown substance allegedly

---

[5]  Remaining Defendants contend that on May 1, 2014 a correctional officer collected Plaintiff's food tray and discovered that he had placed feces inside a milk carton.  A search of the feces revealed the presence of a balloon containing an unknown substance.  The substance had been tampered with to the extent that it could not be tested.

discovered in his stool was never identified, the finding of guilt on the misconduct charges was improper.  Plaintiff contends that the disciplinary proceeding violated due process, and constituted a malicious prosecution.  See id. at ¶ 66.

The Amended Complaint also asserts that his dry cell placement violated his rights under the Equal Protection Clause. See id. at ¶ 30.  The final claim raised by Plaintiff is that he was the subject of a retaliatory transfer to the Security Threat Group Management Unit (STGMU) at another state correctional facility.  Daniels asserts that although he was a leader of the Crips gang over twenty years earlier, said involvement did not warrant his transfer and that it was undertaken as retaliation and to coverup the meritless disciplinary charges he was issued at SCI-Benner.

Presently pending is Remaining Defendants' motion seeking entry of summary judgment.  See Doc. 43.  The motion seeks entry of summary judgment on the grounds that: (1) Plaintiff has failed to show personal involvement by the Remaining Defendants in the alleged violations of his constitutional rights and the conditions of his dry cell placement were not unconstitutional; (2) the doctrine of sovereign immunity bars consideration of Plaintiff's state law claim of malicious prosecution;(3) they are entitled to qualified immunity; (4) the Amended Complaint does not raise viable due process and equal protection

4

allegations; and (5) Plaintiff has not sufficiently plead a retaliation claim.   The opposed motion is ripe for consideration.

## Discussion

### Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of

5

evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Id</u>. (internal quotations omitted); <u>see also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." <u>Celotex</u>, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Personal Involvement**

Remaining Defendants initially assert that Superintendent Pitkins, Deputy Superintendent Ferguson and Counselor Salamon did not have contact with Plaintiff during his eight (8) day dry cell placement. <u>See</u> Doc. 50, p. 9. They add that the Amended Complaint acknowledges that Deputy Superintendent Glass did not

6

have any contact with Plaintiff in the dry cell until after the inmate had been permitted to wash up and was given a new smock and blanket.  Finally, the Remaining Defendants note that the Amended Complaint alleges only that Lieutenant Hoffman was seen in the area of the dry cell.  Based upon those considerations, Remaining Defendants conclude that since there are no viable assertions that they were involved or even aware of Daniels' challenged treatment, the Amended Complaint is improperly seeking to establish liability against them based upon their respective supervisory roles within the prison.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg

7

Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure.  See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).  Pursuant to those decisions, any attempt by

8

Plaintiff to establish liability against Remaining Defendants based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

In support of the lack of personal involvement argument, Superintendent Pitkins, Deputy Superintendent Ferguson and Counselor Salamon have each submitted declarations under penalty of perjury which similarly state that although they knew of Daniels' dry cell placement and the basis for it they were not aware and no one contacted them concerning Plaintiff's claims that he was not being allowed to wash his hands after urinating and defecating or of his concerns that urine and fecal matter was accumulating on his person, smock, and bedding.  See Docs. 57-1,-57-2, & 57-4,  ¶ ¶ 4- 7.  Moreover, they did not recall having personal contact with Plaintiff while he was in the dry cell.

Sworn declarations by Deputy Superintendent Glass and Lieutenant Hoffman states that although they did recall having

9

contact with Plaintiff while he was in the dry cell (Glass on April 30, 2014) they also had not been contacted regarding any lack of hand washing related claim by Plaintiff. See Docs. 57-3, 57-5, ¶¶ 4-6

Based upon this Court's review of the record, especially the Amended Complaint itself, it was a non-defendant, Lieutenant Green, who removed Plaintiff from the visitors' area, strip searched him and him handcuffed and placed in the dry cell. There is no allegation that Green was directed to do so by any of the Remaining Defendants. Plaintiff next indicates that it was Captain Anstead and Lieutenant Houser, both non-defendants, who were thereafter involved in his direct supervision while in the dry cell.

The Amended Complaint vaguely asserts that on the fourth day of Plaintiff's dry cell placement, Chaplain Hansard and Lieutenant called and asked Shift Commander Anstead, as well as Defendants Ferguson and Glass if the prisoner could have a shower or an opportunity to wash himself. See Doc. 2-1, p. 20, ¶ 10. Those requests were allegedly denied. However, the Amended Complaint admits that on April 29, 2014 (day five), he was given two tubs of water, soap and cloth and allowed to wash himself. Plaintiff adds that after April 29, 2014 "I was allowed to wash up at night and wash my hands before meals." Id. at ¶ 13.

10

Plaintiff's Amended Complaint contends that on day six, Defendant Hoffman refused a request seeking permission for the Plaintiff to again clean himself.  Despite that purported refusal, Daniels acknowledges that he was still given opportunity to wash himself that same day and every day thereafter.  See id. at ¶ 14.

On April 30, 2014, Defendant Glass allegedly visited Plaintiff in his dry cell.  Glass stated that it was his belief that Daniels had swallowed contraband and if the inmate agreed to have an x-ray he could be considered for release form the dry cell.  Glass also promised that he would have security investigate the inmate's claims of racially derogatory remarks by Defendant Leahy.

Plaintiff also assert that he administratively appealed the finding of guilt rendered on his misconduct charge to a Program Review Committee consisting of Defendants Ferguson, Salamon, and Glass. See id. at ¶ 52.   On May 23, 2014, Plaintiff contends that he spoke to Defendants Ferguson and Glass regarding his prior dry cell confinement.  There are no other discernible assertions raised against any of the Remaining Defendants. However, the Amended Complaint does indicate at least in part that Daniels wishes to pursue a claim based upon supervisory liability.  See id. at ¶ 23.

It is apparent that the Amended Complaint does include an

11

attempt by Daniels to establish liability against the Remaining Defendants either on the basis of their respective supervisory capacities within SCI-Benner or based upon their involvement in the handling of Plaintiff administrative grievances and appeals. Pursuant to the above discussion, either approach is insufficient for the purpose of establishing liability under § 1983.

**Conditions of Confinement**

Remaining Defendants next contend that since it is undisputed that Plaintiff was provided with:  food and drink thee times a day; a smock to wear; a bed; mattress; and blanket; a medical check every two hours; and opportunity to walk around his cell for exercise the conditions of his relatively brief eight (8) day dry cell confinement were constitutionally acceptable.  See Doc. 50, p. 8.

Prison officials must provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs.  See  Tillman v. Lebanon

County Correctional Facility, 221 F.3d 410 (3d Cir. 2000). [6]

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The length of the inmate's exposure to the alleged unconstitutional conditions and the totality of the circumstances must be considered when making a determination as to cruel and inhumane treatment. A prisoner must also establish a specific deprivation of a single, identifiable basic necessity. Wilson v. Seiter, 501 U.S. 294, 304-05 (1991). The inmate must also demonstrate that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298.

This is clearly not a case where the Plaintiff is challenging a long term confinement. On the contrary, it is undisputed that Daniels was only in the dry cell for 8 days. He

---

[6] A condition of confinement implicates the Eighth Amendment, if it is so reprehensible as to be deemed inhumane under contemporary standards or deprives an inmate of minimal civilized measure of the necessities of life. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991).

also admits that he was provided with opportunity to regularly clean himself after the first four days of his dry cell placement and was also given a clean smock and blanket.  The Amended Complaint rises three contentions, a 4 day inability to clean himself; constant illumination; and limited access to drinking water.

It has been recognized that the temporary placement of a prisoner ion a dry cell for the purpose of examining his excrement for contraband doe not violate the Eighth Amendment. See Gilblom v. Gillipsie, 435 Fed. Appx. 165 (3d Cir. 2011). Furthermore, denial of showers for a temporary period of time is not a constitutional violation.  See Briggs v. Heidlebaugh, 1997 WL 318081 *3 (E.D. Pa. 1997)(denial of showers for two (2) weeks); DiFilippo v. Vaughn, 1996 WL 355336 at *5 (E.D. Pa. 1996)(cold showers for one month); Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992)(deprivation of showers and recreation during a brief period of placement in administrative detention found not to be Eighth Amendment violation).  Based upon an application of the above standards, the alleged denial of showering privileges to the Plaintiff for the short term period of his dry cell placement by itself was not of such magnitude or duration as to rise to the level of an Eighth Amendment violation.

Daniels' assertion that he was not offered an opportunity

14

to clean fecal matter from his body for the first four days of
his dry cell is troubling.  Unlike the scenario in <u>Alvarez v.
County of Cumberland</u>, Civil No. 07-346, 2009 WL 750200 *5 (D.
N.J. March 18, 2009), there is no assertion that the Plaintiff
developed any medical problems due to his inability to wash.
This is also not a case where the prisoner was himself required
to manually search his own excrement.

Nonetheless, the purported failure of prison officials to
allow Daniels to even wash his hands for a four day period is
sufficient to set forth an Eighth Amendment claim.  <u>See</u> <u>Young v.
Quinlan</u>, 960 F.2d 351, 365 (3d Cir. 1992)(not allowing inmate to
wash his hands before eating while housed in dry cell for four
days sets forth viable Eighth Amendment claim).

This Court's inquiry does not end there. With respect to
the Remaining Defendants, Plaintiff asserts that Defendants
Hoffman, Ferguson, and Glass acted improperly by denying his
requests to wash/bathe on days four and five of his dry cell
placement.[7]  However, Daniels admits in his Amended Complaint
that he was afforded opportunity to bathe himself on days four
and five and every day thereafter.  In conclusion, while the
failure to allow Plaintiff to even wash his hand for the first
four days is sufficient to set forth an Eighth Amendment claim

_____

[7]  There are no allegations that Pitkins and Salamon were
aware that Daniels was not being permitted to wash.

15

there are no discernible assertions that any of the Remaining
Defendants were personally involved in making that decision.   As
such, there is no basis for a claim against the Remaining
Defendants since Daniels was admittedly allowed to clean himself
every day after the Remaining Defendants were given notice of
his unsanitary condition.

Plaintiff makes a vague passing assertion that he was in
constant illumination while in the dry cell.   It has been
recognized that "continuous exposure to low wattage night time
security lighting may be permissible based on legitimate
security concerns." Sims v. Piazza, 2009 WL 3147800 *23  (M.D.
Pa. Sept. 28, 2009)(Kosik, J.); King v. Frank, 371 F. Supp.2d
977, 984-85 (W.D. Wisc. 2005).   Similarly, in Brown v. Martinez,
2007 WL 2225842 * 8  (M.D. Pa. July 31, 2007) it was concluded
that the presence of a 15 watt security night light in a
prisoner's cell  was necessary for night time institutional
security and thus did not give rise to a constitutional
violation.

However, requiring inmates to live in constant illumination
may under certain circumstances rise to the level of a
constitutional violation.  Bacon v. Minner, 229 Fed. Appx.  96,
100 (3d Cir.  2007).  In Bacon, the Court of Appeals concluded
that a claim that the main lights in a segregated housing unit
which "were turned on between the hours of 8:30 am and 11:30 pm"

16

as well as between "4:45 am and 7:00 am" did not rise to the level of a constitutional violation because the plaintiff did not allege that he was subject to constant illumination or had suffered any significant medical problem due to the purportedly excessive illumination. The Court concluded that Inmate Bacon's claims "were not objectively serious to warrant constitutional protection." Id.

As was the case in Bacon, Plaintiff does not indicate that he suffered any medical issue due to the 8 day period of constant illumination. Daniels' Amended Complaint does not even describe the type of illumination at issue or indicate how it affected him. Pursuant to the above discussion, Daniels' vague assertion that he was subject to constant lighting in the dry cell for a period of 8 days does not set forth a viable constitutional claim.

The Amended Complaint acknowledges that Plaintiff was provided with three meals a day and was given water and other beverages at meal time. Daniels also admits that he was medically checked every two hours. Given those admissions, Plaintiff's assertion of temporarily being provided with insufficient drinking water likewise does not rise to the level of a constitutional violation. Pursuant to the above discussion, Remaining Defendants are entitled to entry of summary judgment with respect to the allegations that Daniels

17

was subjected to unconstitutional conditions of confinement.

## Equal Protection

In his complaint, Plaintiff also raises a vague claim that his rights under the Equal Protection Clause were violated. Remaining Defendants argue that there are no factual assertions set forth which could support an denial of equal protection claim.  See Doc. 50, p. 14.

The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)); see also Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

There is no viable allegation in the present case that Plaintiff was treated differently than other similarly situated prisoners suspected of ingesting contraband.  Daniels' vague assertion of an equal protection violation cannot proceed.

## Due Process

Remaining Defendants next contend that the Amended

18

Complaint to the extent that it asserts that Plaintiff was placed in a dry cell without notice or a hearing fails to set forth a viable denial of due process claim. See Doc. 50, p. 12. They similarly assert that there is no basis for relief with respect to any claim by Plaintiff with respect to his associated misconduct proceeding since he was only sanction to a term of disciplinary custody in the prison's Restricted Housing Unit (RHU).

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995). A protected liberty interest may be created by either the Due Process Clause itself or by state law. Id. Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Conversely, there can be no due process violation where there is no protected liberty interest.

The Supreme Court in Sandin stated that "[d]iscipline by prison officials in response to a wide range of misconduct" is

expected as part of an inmate's sentence.   Sandin, 515 U.S. at

485.   The United States Court of Appeals for the Third Circuit

relying on the Sandin principles has found no merit in due

process claims presented regarding short term institutional

disciplinary custody placement.   See Torres v. Fauver, 292 F.3d

141, 150-51 (3d Cir. 2002)(placement in segregation as a

disciplinary sanction did not implicate a protected liberty

interest); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir.

2002)(seven (7) months of disciplinary confinement did not

implicate liberty interest); Diaz v. Canino, 502 Fed. Appx. 214,

218 (3d Cir.  2012)(a 360 day term of disciplinary confinement

did not implicate a protected liberty interest).

The Third Circuit in Griffin v. Vaughn, 112 F.3d 703 (3d

Cir. 1997), addressed an action initiated by a Pennsylvania

state inmate who had been held in administrative custody for a

prolonged period.   The Court applied Sandin and concluded that

placement without any type of due process hearing for a period

of fifteen (15) months was not an atypical and significant

hardship.   Furthermore, the inmate's "commitment to and

confinement in administrative custody did not deprive him of a

liberty interest and that he was not entitled to procedural due

process protection."   Id. at 708.   Finally, an inmate placed in

administrative custody pursuant to a legitimate penological

reason could "be required to remain there as long as that need

20

continues."  Id.

Pursuant to the standards developed in Sandin, Torres, Griffin, and similar subsequent decisions, this Court finds that the Amended Complaint to the extent that it alleges that Daniels was subjected to an improper 8 day placement in a dry cell for administrative reasons and thereafter a 270 day term of disciplinary custody in the RHU are meritless because the magnitude and durations of those placements did not implicate a protected liberty interest.

This determination is bolstered by the undisputed fact that Plaintiff was placed in a dry cell only after he was suspected of ingesting drugs.  Clearly, such alleged conduct by Daniels provided a legitimate basis for an immediate dry cell placement. The Plaintiff was thereafter transferred to the prison's RHU to a serve a term of disciplinary custody which was imposed after he was found guilty of possession of contraband.

Since Daniels has failed to sufficiently allege that he was subjected to administrative and disciplinary placements while confined at SCI-Benner which constituted an atypical and significant hardship as required under Sandin, the request for entry of summary judgment with respect to those due process claims will be granted.

With respect to Plaintiff's transfer to SCI-Forest, it is well-settled that a prisoner has no justifiable expectation that

21

he will be incarcerated in a particular prison. <u>Olim v. Wakinekona</u>, 461 U.S. 238 (1983). In <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976), the Supreme Court held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." <u>Id</u>. at 242.

On the same day, the Supreme Court decided the seminal case of <u>Meachum v. Fano</u>, 427 U.S. 215, 216 (1976), holding that no liberty interest under the Due Process Clause of the Fourteenth Amendment is infringed upon when an inmate is transferred, with or without a hearing, to another state correctional institution with substantially less favorable conditions. The Court added that where the state does not provide a liberty interest in being housed at a particular institution. <u>Meachum</u>, 427 U.S. at 228.

Pennsylvania law leaves the housing of inmates in particular institutions to the discretion of state officials. <u>See</u> 37 Pa. Code § 93.11(a); <u>Hannon v. Terra</u>, 1995 WL 129219 at *11 (E.D. Pa. 1995). An inmate can only state a claim if a transfer was made for some constitutionally impermissible reason such as retaliation against the prisoner's exercise of constitutionally protected rights. <u>See</u> <u>Jackson v. Cain</u>, 864

22

F.2d 1235, 1248 (5th Cir. 1989).  No such assertion is raised in
the present action.  Accordingly, the Plaintiff did not have a
protected liberty interest in either being held or remaining at
any particular prison.

Additionally, the United States Supreme Court has held that
an inmate has "no legitimate statutory or constitutional
entitlement" to any particular custodial classification even if
a new classification would cause that inmate to suffer a
"grievous loss." Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976);
James v. Reno, 39 F. Supp. 2d 37, 40 ( D.D.C. 1999)(citation
omitted) (a federal inmate "has no liberty interest in his
security classification").  Therefore, any due process
allegation by Daniels challenging his STGMU classification must
also fail.

**Retaliation**

Plaintiff contends that his transfer to the STGMU was
ordered in retaliation because he challenged the legality of his
dry cell placement and related misconduct charge.  Remaining
Defendants assert that a viable claim has not been stated
because "there is no casual connection between Plaintiff's
protected conduct and the basis of the transfer." Doc. 50, p.
14.  They add that the decision to transfer Daniels to the STGMU
was recommended by a Field Intelligence Unit which was
investigating street gang activities.

23

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a misconduct appeal or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005). Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

24

Once Plaintiff has made a prima facie case, the burden shifts to defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional. On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

In support of their summary judgment argument Remaining Defendants have each submitted declarations under penalty of perjury which similarly state that Plaintiff was transferred to the STGMU as a result of a spectial investigation of gang activity because it was learned that the inmate was introducing drugs into SCI-Benner. Furthermore, the Plaintiff's transfer was unrelated to his challenge to his dry dell placement and

25

ensuing misconduct charge.  See Doc. 57-1, ¶ 8-11.

Due to the vagueness of the Amended Complaint and the
Remaining Defendants' respective declarations, there are simply
no facts set forth by Daniels which could arguably support a
claim under Rauser that any of the Remaining Defendants
intentionally subjected him to a retaliatory transfer as a
consequence for pursuing a constitutionally protected activity.
Remaining Defendants' request for entry of summary judgment with
respect to the assertion of retaliation will be granted.

**Malicious Prosecution**

With respect to Plaintiff's pendent state law claim of
malicious prosecution, federal courts have jurisdiction over
state claims which are related to the federal claims and result
from a common nucleus of operative facts.  See United Mine
Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v.
Howard, 427 U.S. 1, 9 (1976).  A district court may decline to
exercise supplemental jurisdiction over a claim when the court
has dismissed all claims over which it has original
jurisdiction.  See 28 U.S.C. § 1367(c)(3) (1997).  Decisions
regarding pendent jurisdiction should be premised on
considerations of judicial economy, convenience and fairness to
the litigants.  New Rock Asset Partners v. Preferred Entity
Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation
omitted).

26

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim.  Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)).  However, when the federal claim is dismissed prior to trial, a district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so."  Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

Since all of the Plaintiff's federal claims in this matter have been dismissed, jurisdiction will be declined with respect to Daniels' state law claim of malicious prosecution and it will be remanded back to the Centre County Court of Common Pleas.  An appropriate Order will enter.[8]

RICHARD P. CONABOY
United States District Judge

DATED: MARCH 6th, 2017

---

[8]  In light of the Court's determination herein discussion of the qualified immunity argument is not required.

27